IN THE UNITED STATES DISTRICT COURT FOR
THE MIDDLE DISTRICT OF ALABAMA
NORTHERN DIVISION

| | |
|---|---|
| TINA McMANAMA, | ) |
| | ) |
| Plaintiff, | ) |
| | ) |
| v. | ) CASE NO. 2:07-cv-479-ID |
| | ) |
| GANNETT CO., INC., | ) (WO) |
| | ) |
| Defendant. | ) |

**MEMORANDUM OPINION AND ORDER**

Tina McManama brings this action against Gannett Company, Inc. ("Gannett"), alleging that Gannett discriminated against her on the basis of her gender by paying her less than it paid men to do the same job, in violation of the Equal Pay Act, 29 U.S.C. § 206(d) ("EPA"). This cause is before the Court on Gannett's Motion for Summary Judgment (Doc. # 25), filed September 8, 2008. The Court has carefully considered all submissions in support of and in opposition to the motions and the relevant case law. For the reasons set forth below, the Court finds that Gannett's Motion for Summary Judgment is due to be DENIED.

**I. JURISDICTION AND VENUE**

The Court exercises subject matter jurisdiction over Plaintiff's claims pursuant to 28 U.S.C. §§ 1331 (federal question) and 1343(4) (civil rights). The parties contest neither personal jurisdiction nor venue, and the Court finds an adequate factual basis for each.

## II. SUMMARY JUDGMENT STANDARD

Under Rule 56(c) of the Federal Rules of Civil Procedure, summary judgment is appropriate "if the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any, show that there is no genuine issue as to any material fact and that the moving party is entitled to a judgment as a matter of law." Fed. R. Civ. P. 56(c). "An issue of fact is 'genuine' if the record as a whole could lead a reasonable trier of fact to find for the nonmoving party. An issue is 'material' if it might affect the outcome of the case under the governing law." *Redwing Carriers, Inc. v. Saraland Apartments,* 94 F.3d 1489, 1496 (11th Cir. 1996) (citing *Anderson v. Liberty Lobby, Inc.,* 477 U.S. 242, 248 (1986)). "A genuine issue of material fact does not exist unless there is sufficient evidence favoring the nonmoving party for a reasonable jury to return a verdict in its favor." *Chapman v. AI Transp.,* 229 F.3d 1012, 1023 (11th Cir. 2000) (en banc) (quoting *Haves v. City of Miami,* 52 F.3d 918, 921 (11th Cir. 1995) (internal quotation marks and citations omitted)).

The party seeking summary judgment "always bears the initial responsibility of informing the district court of the basis for its motion, and identifying those portions of 'the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any,' which it believes demonstrate the absence of a genuine issue of material fact." *Celotex Corp. v. Catrett*, 477 U.S. 317, 323 (1986). The movant can meet this burden by presenting evidence showing there is no dispute of material fact, or by showing the nonmoving party has failed to present evidence in support of some element of its case on

which it bears the ultimate burden of proof. *Id.* at 322-23.

Once the moving party has met its burden, Rule 56(e) "requires the nonmoving party to go beyond the pleadings and by [its] own affidavits, or by the 'depositions, answers to interrogatories, and admissions on file,' designate 'specific facts showing that there is a genuine issue for trial.'" *Id.* at 324. To avoid summary judgment, the nonmoving party "must do more than simply show that there is some metaphysical doubt as to the material facts." *Matsushita Elec. Indus. Co. v. Zenith Radio Corp.*, 475 U.S. 574, 586 (1986). On the other hand, a court ruling on a motion for summary judgment must believe the evidence of the nonmovant and must draw all justifiable inferences from the evidence in the nonmoving party's favor. *See, e.g., Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 255 (1986); *McCormick v. City of Fort Lauderdale,* 333 F.3d 1234, 1243 (11th Cir. 2003) (the evidence and all reasonable inferences from the evidence must be viewed in the light most favorable to the nonmovant). After the nonmoving party has responded to the motion for summary judgment, the court must grant summary judgment if there is no genuine issue of material fact and the moving party is entitled to judgment as a matter of law. *See* Fed. R. Civ. P. 56(c).

### III.  FACTS

The Court has carefully considered all deposition excerpts and documents submitted in support of and in opposition to the motion. The submissions of the parties, viewed in the light most favorable to the non-moving party, establish the following relevant facts:

Gannett is an international news and information company that, among other things, publishes newspapers throughout the United States. One of the newspapers that Gannett publishes is the Montgomery Advertiser in Montgomery, Alabama.

McManama worked for Gannett from 1987 to 2006 for several different newspapers that they publish. McManama has an Associate of Arts degree in Commercial Art and Design from Vincennes University. McManama does not have a bachelor's degree.

McManama was first hired by Gannett to work for the Palm Springs Desert Sun in October 1987 as Marketing Art Director. McManama worked at the Desert Sun until 1997, when she was promoted to Market Development Director at the Hattiesburg American, another Gannett newspaper. When McManama left the Desert Sun, her salary was approximately $35,000 per year. Her salary increased to $46,000 per year when she relocated to Hattiesburg; an increase of 31% in her salary.

In November 2001, McManama applied for and was selected as the Market Development Director at the Montgomery Advertiser. When McManama left Hattiesburg, her salary was $54,500 per year. Her salary increased to $65,000 per year when she relocated to Montgomery; an increase of 19% in her salary.

Gannett has established a salary grade schedule that determines the range of salary it will pay its employees at each position. The salary for the Market Development Director of the Montgomery Advertiser was chosen at all times relevant to this case by the Vice President of Compensation, Robert Oliver, and the Publisher of the Montgomery Advertiser,

Scott Brown. Gannett's written compensation policy states:

> Your compensation is consistent with the job responsibilities of your position. Consideration in determining salary levels may also depend on previous experience, education, performance, and other qualifications.
>
> Your compensation is generally reviewed annually, usually on the anniversary of your current position or last salary change. Your performance is the key to determining whether a change is appropriate. If your performance warrants a change, the amount is determined by compensation guidelines that reflect level of performance, the economic climate in the country and region, and the company's business success.

Gannett's written policies further describe guidelines for selecting salaries within the salary ranges established for each position:

> As a general rule, the range from minimum to maximum of the job grade is 40-50%. The minimum assumes competent performance by an employee who meets the minimum qualifications for the job. The maximum of the range should be set to encompass the highest sustained performance for that job classification. The mid-point of the salary range represents the competitive rate that would be paid for commendable performance by a fully-qualified person after several years on the job.

McManama's position in Hattiesburg was a Grade 23, which had a minimum salary of $54,000 and a maximum of $90,000. When McManama moved to Montgomery, her new position was a Grade 25, which had a minimum salary of $68,000 and a maximum of $116,000. Therefore, when McManama began as Market Development Director for the Montgomery Advertiser earning $65,000, she was earning $3,000 per year below the stated minimum salary for the position.

McManama's salary was increased in 2003 to $68,000, the minimum salary for her position. When McManama left the Montgomery Advertiser in 2006, she was earning

5

$75,500, which was $5,500 above the then-minimum salary for the position and $18,500 below the midpoint of the salary range. McManama received positive performance evaluations while she worked for the Montgomery Advertiser. Throughout McManama's career working for Gannett, she was consistently paid at or near the minimum salary for her position, and sometimes was paid below the minimum. According to McManama, after she gave Gannett notice that she was leaving the company, Brown told her "women don't know how to negotiate, hence they get paid less" and that she "needed to hold out for $90,000 because she was worth that."

Don Halleck held the position of Market Development Director at the Montgomery Advertiser immediately prior to McManama. Halleck has a bachelor's degree in Economics and a master's degree in Business Administration with a concentration in Marketing. When Halleck was being considered for the Market Development Director position, he was working with an advertising agency. Halleck had never worked for a newspaper prior to his work for the Montgomery Advertiser. Halleck's starting salary at the Montgomery Advertiser was $87,000, which was $22,000 more than McManama's starting salary. Scott Brown was the Gannett employee responsible for hiring both Halleck and McManama. Halleck did not perform well and was asked to resign after less than one year on the job.

McManama did not discover that Halleck had been paid substantially more than she until March 2007, after she had left Gannett. McManama filed this action on May 30, 2007.

## IV.  DISCUSSION

A.   **Liability Under The Equal Pay Act**

An employee demonstrates a prima facie case of an Equal Pay Act violation by showing that the employer paid employees of opposite genders different wages for equal work for jobs which require equal skill, effort, and responsibility, and which are performed under similar working conditions.  *Steger v. Gen. Elec. Co.*, 318 F.3d 1066, 1077-78 (11th Cir. 2003).  Gannett concedes that McManama has established a prima facie case under the EPA through the use of Halleck as a comparator.  Indeed, given the fact that Halleck performed the exact same job as McManama for more money, this Court finds that McManama has established a prima facie case.

Once the employee presents a prima facie case, the burden shifts to the employer to avoid liability by proving by a preponderance of the evidence that the difference in pay is based on (i) a seniority system; (ii) a merit system; (iii) a system which measures earnings by quantity or quality of production; or (iv) any other factor other than sex.  *See* 29 U.S.C. § 206(d)(1).  The burden to prove these affirmative defenses is heavy because the employer must demonstrate that "the factor of sex provided *no basis* for the wage differential." *Steger*, 318 F.3d at 1078 (emphasis added).  Furthermore, the EPA prescribes a form of strict liability.  Once the disparity in pay between substantially similar jobs is demonstrated, the burden shifts to the defendant to prove that a factor other than sex is responsible for the differential. If the defendant fails, the plaintiff wins. The plaintiff is not required to prove

discriminatory intent on the part of the defendant. *Miranda v. B & B Cash Grocery Store*, 975 F.2d 1518, 1533 (11th Cir. 1992).

Gannett argues that it is not liable under the EPA because the difference in salary between McManama and Halleck can be explained by the differences between the two in prior salary, experience, and education. While an employer may not rely on prior salary alone to justify a difference in pay, an employer may avoid liability under the EPA by proving that the difference in pay was based on prior salary and some other factor, such as experience. *See Irby v. Bittick*, 44 F.3d 949, 955 (11th Cir. 1995). Moreover, "business reasons", such as experience, are legitimate "factors other than sex" so long as they can be rebutted. *Id.* at 956. A plaintiff may rebut a defense like experience by showing he or she had equal or more experience of the same type. *Id.* Time spent in a position is a measurable quantity one can sufficiently rebut. *Id.*

Gannett argues that it treats internal and external hires differently, which explains the difference in pay on a gender neutral basis. For external hires, Gannett claims its policy is to offer whatever salary Gannett feels is necessary to attract the candidate to the relevant market. For internal promotions, however, Gannett claims that it has a general rule that such promotions should result in a range of 10-15% salary increase over what the employee is currently earning.

Prior to the promotion to Market Development Director of the Montgomery Advertiser, McManama was earning $54,500 per year. Her salary increased to $65,000 per

year when she began to work at the Montgomery Advertiser. Therefore, Gannett argues, McManama's salary increased 19% after the promotion, which exceeded the limit on internal promotions normally observed at Gannett. The problem with this argument is that this "10-15%" rule does not appear in any of Gannett's written policies. Moreover, when McManama was promoted to the Hattiesburg American in 1997, also as an internal promotion, her salary increased by more than 30%. Accordingly, this Court finds no evidence that such a rule actually existed, or that, even if such a rule or guideline did exist, it was a meaningful enough rule that this Court could be confident that the rule was responsible for the difference in pay, rather than unlawful discrimination.

Furthermore, Gannett argues that Halleck had twenty years of experience in marketing and advertising management positions, and he had a masters degree in Business Administration with a concentration in Marketing. McManama had only four years of experience in a marketing management position, and she did not have a bachelor's degree. McManama argues that she was actually the more experienced candidate because she had worked in the newspaper industry for Gannett for fourteen years, and had been doing the exact same job—Market Development Director—for four years. On the other hand, Halleck had no newspaper experience and was working for an advertising agency when he was hired.

With these facts alone, this Court might be inclined to accept Gannett's argument that the difference in pay was based on a business judgment regarding the respective value of McManama and Halleck's relative education and experience. However, this Court finds that

9

several factors, taken in the light most favorable to the plaintiff, create a genuine issue of material fact for trial as to whether the difference in pay was the result of "factors other than sex."

First, despite positive evaluations, Gannett consistently paid McManama at or near the minimum salary for her work throughout her entire fourteen-year career at Gannett. Second, the difference between what McManama and Halleck earned was substantial, $22,000, and McManama was not even paid the minimum salary set for the position by Gannett policy when she was hired. Third, and most significantly, after five years on the job and consistently earning positive evaluations, McManama was still being paid $12,000 less than what Halleck was first offered five years earlier, and $18,500 below the midpoint of the then-current salary range for the Grade 25 position, which had increased over time. According to Gannett's salary guidelines, "[t]he mid-point of the salary range represents the competitive rate that would be paid for commendable performance by a fully-qualified person after several years on the job."  Therefore, under these guidelines, because McManama had several years on the job and consistently earned "commendable" performance evaluations, she should have been earning close to the midpoint of the salary range, which would have been $94,000. However, after five years, Gannett was only paying McManama $75,500, still barely above the minimum salary.

In other words, Gannett consistently violated its own policies in order to pay McManama at or below the minimum salary established for her job.  Under these

circumstances, this Court finds that a reasonable jury could find in favor of McManama. Therefore, Gannett is not entitled to summary judgment.

### B. Damages and the Statute of Limitations

Claims brought under the EPA are subject to a two-year statute of limitations for ordinary violations, and a three-year statute of limitations for willful violations. *See* 29 U.S.C. § 255; *Alvarez Perez v. Sanford-Orlando Kennel Club, Inc.*, 515 F.3d 1150, 1164 (11th Cir. 2008). Gannett argues that the two-year limitations period applies to this case. McManama claims there is sufficient evidence to find Gannett acted willfully, which would mean the three-year statute of limitations was applicable.

McManama incorrectly argues that the *Jiffy June* standard of willfulness applies to determining whether the two or three-year statute of limitations applies. In *Coleman v. Jiffy June Farms, Inc.*, 458 F.2d 1139, 1142 (5th Cir. 1971), the Fifth Circuit held that an employer acted wilfully within the definition of the FLSA when "the employer knew or suspected that his actions might violate the FLSA. Stated most simply, we think the test should be: Did the employer know the FLSA was in the picture?"[1] However, the Supreme Court has rejected the *Jiffy June* "in the picture" standard explicitly. *McLaughlin v. Richland Shoe Co.*, 486 U.S. 128, 133 (1988). Therefore, in order to act "willfully" as defined by 29 U.S.C. § 255, an employer must act knowingly, or with reckless disregard for whether its

---

[1] In *Bonner v. City of Prichard*, 661 F.2d 1206, 1209 (11th Cir. 1981) (en banc), the Eleventh Circuit adopted as binding precedent all Fifth Circuit cases submitted or decided prior to October 1, 1981.

11

conduct was prohibited by the applicable statute. *Id.*; *Alvarez Perez*, 515 F.3d at 1165. The employee has the burden to prove willfulness. *Alvarez Perez*, 515 F.3d at 1162-63.

However, Gannett does not argue that McManama's claims are time-barred. The two-year limitations period would extend back to May 30, 2005—approximately eighteen months before McManama left Gannett. Moreover, the Eleventh Circuit has held in the context of a disparate pay case brought under Title VII that

> in cases in which the employer has a system for periodically reviewing and re-establishing employee pay, an employee seeking to establish that his or her pay level was unlawfully depressed may look no further into the past than the last affirmative decision directly affecting the employee's pay immediately preceding the start of the limitations period. Other, earlier decisions may be relevant, but only to the extent they shed light on the motivations of the persons who last reviewed the employee's pay, at the time the review was conducted

*Ledbetter v. Goodyear Tire and Rubber Co., Inc.*, 421 F.3d 1169, 1183 (11th Cir. 2005), *aff'd*, 127 S.Ct. 2162 (2007). "Moreover, the employee is limited to recovering for paychecks received within the limitations period." *Id.* at 1183 n.18. Consequently, McManama can only recover based upon the salary she received after May 30, 2005 for an ordinary violation, or May 30, 2004 for a willful violation.

This Court finds that taking the evidence in the light most favorable to the plaintiff, a reasonable jury could find that Gannett acted willfuly. This is due to (1) the consistency with which Gannett violated its own written policies in order to pay McManama at or below the minimim salary established for her job; and (2) the substantial difference in salary the comparator earned for the exact same job.

## V.  CONCLUSION

As stated above, this Court finds a genuine issue of material fact exists as to whether the difference in pay between McManama and her comparator is due to a "factor other than sex."  This Court also finds that a genuine issue of material fact exists as to whether Gannett acted willfully when it established McManama's salary.

For the reasons set forth above, it is CONSIDERED and ORDERED that Defendant's Motion for Summary Judgment (Doc # 25) be and the same is hereby DENIED.

DONE this 18th day of November, 2008.

>                    /s/ Ira DeMent
> SENIOR UNITED STATES DISTRICT JUDGE